1

2

3

4

5

6

7

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

8

9

10

11

12

13

| | |
|---|---|
| Marquis Lee Johnson,               )<br>                 Petitioner,         )<br>                                    )<br>vs.                                 )<br>                                    )<br>Dora Schriro, et al.,               )<br>                 Respondents.       )<br>_____)  | CV-05-613-PHX-EHC (JCG)<br><br>**REPORT & RECOMMENDATION** |

14

15

16

17

18

19

20

21

        Petitioner, Marquis Lee Johnson, who is presently confined in the Arizona State Prison Complex in Florence, Arizona, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Guerin for Report and Recommendation. Before the Court are the Petition for Writ of Habeas Corpus ("Petition") (Doc. No. 1), Respondents' Response to Petition for Writ of Habeas Corpus ("Answer")[1] (Doc. No. 13), and Petitioner's Reply (Doc. No. 14). The Magistrate Judge recommends that the District Court, after independent review, deny the petition.

22

**FACTUAL AND PROCEDURAL BACKGROUND**

23

24

        On, July 7, 1999, Petitioner was convicted by a jury in Maricopa County Superior Court on seven counts: Count 1, drive-by shooting, a class 2 dangerous felony; Counts 2 and

25

26

27

28

        [1] Respondents appear to have made a clerical error in the preparation of their exhibits filed in support of their Answer. For example, Respondents cite repeatedly to portions of transcript attached as Exhibit P (Answer, pg. 12, n. 3), but Exhibit P contains only one page of trial transcript, and it is not a page cited in Respondents' Answer. (See also this Court's discussion at pg. 17, lines 7-14 of this R&R).

3, aggravated assault, class 3 dangerous felonies; Counts 4, 5 and 6, endangerment, class 6 dangerous felonies; and Count 7, unlawful flight from a law enforcement vehicle, a class 5 felony.[2]  (Answer, Ex. P, pgs. 73-77; Ex. A.)  According to the facts as summarized in Petitioner's opening brief on direct appeal, Jennifer Stewart and Frank Malone were driving with their three children, ages six months to three years, and stopped at a red light.  (Answer, Ex. C, pg. 3.)  A white Cadillac pulled up to the right of their car and a man fired nine or ten shots from a nine-millimeter handgun into their car.  (Id.)  An eye-witness at the scene described the driver as a dark-complected man wearing a black spandex-type hat.  (Id., pg. 4.)   An officer responding to the scene spotted the white Cadillac and engaged in a high-speed chase.  (Id., pg. 5.)  The driver of the Cadillac eventually jumped out of the car and ran; police pursued him in and out of buildings and eventually lost sight of him.  (Id.)  Police established a perimeter and began clearing apartments.  (Id.)  They spotted Petitioner hiding in the bushes and ordered him out; police found a cell phone and a black hat in the bushes where Petitioner had been hiding.  (Id.)  When apprehended, Petitioner was wearing a bullet-proof vest.  (Id.)  Police discovered in the Cadillac a black hair net and a cellular phone adapter compatible with the phone found in the bushes where Petitioner had been hiding.  (Id., pg. 7.)   Frank Malone identified Petitioner as the shooter shortly after he was apprehended.  (Id., pg. 4.)

Petitioner testified at trial that at the time of the crime, he was waiting for his boss to pick him up when he heard noises and saw police.  (Id.)  Petitioner jumped into the bushes to hide from police because he had outstanding traffic warrants.  (Id.)  Petitioner testified that he was wearing the black hat discovered in the bushes, but that the hat was angora, not spandex.  (Id.)  Petitioner denied being near the scene of the crime, denied owning a Cadillac or a nine-millimeter gun, and denied shooting at the victims.  (Id.)

On January 14, 2000, Petitioner was sentenced to multiple consecutive and concurrent

---

[2] Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct."

terms of imprisonment totaling 19.5 years. (Answer, Ex. B.)  Petitioner timely appealed his conviction to the Arizona Court of Appeals, raising a single claim: that Petitioner was entitled to an additional eleven days of pre-sentence credit. (Ex. C, pgs. 10 & 12.)   On November 2, 2000, the Arizona Court of Appeals issued a memorandum decision granting Petitioner the requested relief and affirming the judgment as modified. (Answer, Ex. A.) Petitioner did not seek review by the Arizona Supreme Court. (Answer, Ex. E.)

On February 6, 2001, Petitioner filed a notice of post-conviction relief under Rule 32, Ariz. R. Crim. P.  (Answer, Ex. F.) Petitioner filed a pro se petition for post-conviction relief on March 6, 2002, in which he identified fifteen issues but raised 14 claims of prosecutorial misconduct, 8 claims of abuse of judicial discretion and 15 ineffective assistance of counsel claims. (Answer, Ex. G.) On August 2, 2002, the trial court issued a minute entry addressing Petitioner's claims; the trial court concluded that Petitioner's claims of prosecutorial misconduct and abuse of judicial discretion were precluded because Petitioner had failed to present them in his direct appeal, and that Petitioner's claims of ineffective assistance of counsel were without merit.  (Answer, Ex. I.)  The trial court accordingly dismissed Petitioner's petition for post-conviction relief.  Id.

Petitioner petitioned the Arizona Court of Appeals for review of the trial court's dismissal of his petition for post-conviction relief, filing the same brief that he had filed with the trial court. (Answer, Ex. J.)  On March 2, 2004, the Arizona Court of Appeals denied review without comment.  (Answer, Ex. K.)  Petitioner then filed a pro se petition for review in the Arizona Supreme Court. (Answer, Ex. L.)  The Arizona Supreme Court denied review without comment on October 5, 2004. (Answer, Ex. M.)

On February 23, 2005, Petitioner filed his Petition for Writ of Habeas Corpus in federal court.  In his Petition, Petitioner presents twenty-one claims for relief:

1.   **Ground 1:** Prosecutor engaged in prosecutorial misconduct in violation of Petitioner's due process rights when he failed to timely disclose evidence;

2.   **Ground 2:** Prosecutor failed timely to disclose evidence, thereby preventing Petitioner's trial counsel from providing effective assistance of counsel;

3

3.    **Ground 3:** Prosecutor engaged in prosecutorial misconduct in violation of Petitioner's due process rights when he cross-examined Petitioner regarding his alibi;

4.    **Ground 4:** Prosecutor engaged in prosecutorial misconduct in violation of Petitioner's due process rights when prosecutor identified the victim's car by model during questioning;

5.    **Grounds 5, 6, 7, 8:** Prosecutor engaged in prosecutorial misconduct in violation of Petitioner's due process rights when prosecutor misstated the evidence during his closing argument;

6.    **Ground 9:** Petitioner's due process rights were violated when the court prohibited his trial counsel from admitting evidence of his leg injury as part of his defense;

7.    **Ground 10:** Petitioner was denied effective assistance of counsel when his counsel failed to present alibi testimony and medical evidence of Petitioner's injury;

8.    **Ground 11:** Petitioner's confrontation clause rights were violated when one of the victims offered testimony that contradicted the testimony of a police officer regarding statements made by the victim at the scene;

9.    **Ground 12:** Petitioner was denied effective assistance of counsel when his trial counsel failed to file a motion for a new finding of probable cause;

10.   **Ground 13:** Petitioner's due process rights were violated when a copy of the grand jury transcript was never filed with the trial court;

11.   **Ground 14:** Petitioner was denied effective assistance of counsel when his appellate counsel failed to raise issues that Petitioner thought should be raised on appeal;

12.   **Ground 15:** Prosecutor engaged in prosecutorial misconduct in violation of Petitioner's due process rights when prosecutor vouched for witness during closing argument;

13.   **Ground 16:** Prosecutor engaged in prosecutorial misconduct in violation of Petitioner's due process rights when prosecutor accused Petitioner of lying during closing argument;

14.   **Ground 17:** Prosecutor engaged in prosecutorial misconduct in violation of

4

Petitioner's due process rights when he made unfair arguments about fingerprint evidence during closing argument;

15.   **Ground 18:** Petitioner's due process rights were violated when one of the victims offered testimony that was not in the police report of her interview with police;

16.   **Ground 19:** Petitioner's due process rights were violated when he was asked a question by a jury member that he could not answer without referencing the fact that he was currently incarcerated;

17.   **Ground 20:** The state's indictment of Petitioner for multiple charges arising out of the same incident violated the double jeopardy clause of the Sixth Amendment; and

18.   **Ground 21:** Petitioner was denied effective assistance of counsel when his trial counsel failed to file pre-trial motions.

(Petition, pgs. 5-37.)

Respondents contend that the Petition should be denied because Petitioner has failed to exhaust his state court remedies as to all claims except his claims for ineffective assistance of counsel, which Respondents claim are without merit.

In his Reply, Petitioner blames his failure to exhaust his state court remedies on his appellate counsel, arguing that he was deprived of effective assistance of counsel when his appellate counsel elected to argue only one issue in his direct appeal.  Petitioner also disputes Respondents' argument that the ineffective assistance of counsel claims raised in his Petition are without merit.

### DISCUSSION

The Magistrate Judge recommends that the Petition be denied because Petitioner has failed to exhaust his state court remedies with respect to Grounds 1, 3, 4, 5, 6, 7, 8, 9, 11, 13, 15, 16, 17, 18, 19, and 20, and because Grounds 2, 10, 12, 14, and 21, are without merit.

**A.    Exhaustion**

Ordinarily, before a federal court will consider the merits of a habeas petition, the petitioner must exhaust the remedies available to him in state court.   28 U.S.C. §2254(b)(1)(A);  Picard v. Connor, 404 U.S. 270, 275 (1971.)  First enunciated in Ex parte

Royall, 117 U.S. 241 (1886), the exhaustion requirement is designed "not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992). The requirement is grounded in principles of comity, and reflects a desire to protect state courts' role in the enforcement of federal law. Castille v. Peoples, 489 U.S. 346, 349 (1989) (citation omitted). The requirement is also based on a pragmatic consideration that fully exhausted claims will usually be accompanied by a complete factual record once they reach federal court. Rose v. Lundy, 455 U.S. 509, 519 (1982).

A petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254. See Rose v. Lundy, 455 U.S. 509, 519 (1982). A petitioner must have also presented his claim in a procedural context in which its merits will be considered. See Castille v. Peoples, 489 U.S. 346, 351 (1989). A habeas petitioner's claims may be precluded from federal review on exhaustion grounds in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). Second, the claim may be procedurally defaulted in federal court if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Id. at 735 n.1. If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. See Gray v. Netherland, 518 U.S. 152, 162 (1996); Sawyer v. Whitley, 505 U.S. 333, 337 (1992); Murray v. Carrier, 477 U.S. 478, 485 (1986).

Respondents contend in their Answer that this Court is precluded from considering Grounds 1, 3, 4, 5, 6, 7, 8, 9, 11, 13, 15, 16, 17, 18, 19, and 20, of the Petition, i.e. all claims

1    other than ineffective assistance of counsel, on the merits, because Petitioner failed to

2    exhaust those claims within the state system and now those claims are procedurally

3    defaulted. The Court agrees with Respondent's contention as to Grounds 1, 3, 4, 5, 6, 7, 8,

4    11, 13, 15, 16, 17, 18, 19, and 20, and finds that Ground 9 was not properly raised in the state

5    court.

6         Petitioner did not present Ground 9 in his direct appeal or in his state court habeas

7    petition.  Although Petitioner argued that his trial counsel was ineffective for failing to

8    introduce medical records of his leg injury (Answer, Ex. G, pg. 15-16), he did not allege that

9    his due process rights were violated by the court's limitations on the scope of Petitioner's own

10   testimony regarding his injury.  Accordingly, the constitutional ground for Ground 9 was

11   never presented to the state courts and cannot be raised for the first time in federal court.  See

12   Picard v. Connor, 404 U.S. 270, 277 (1971) (holding that it is not sufficient to raise only the

13   facts supporting the claim; rather, "the constitutional claim ... inherent in those facts" must

14   be brought to the attention of the state court).  Petitioner is now precluded by Arizona Rules

15   of Criminal Procedure 32.2(a)(3) and 32.4 from obtaining relief on Ground 9 in state court

16   absent an applicable exception, which he does not assert.  See Ariz. R. Crim. P. 32.2(b);

17   32.1(d)-(h); Beaty v. Stewart, 303 F.3d at 997, 987 & n.5 (2002) (finding no state court

18   remedies and noting that petitioner did not raise any exceptions to Rule 32.2(a)).  Thus,

19   Ground 9 is technically exhausted but procedurally defaulted, absent a showing of cause and

20   prejudice or a fundamental miscarriage of justice.  See Coleman v. Thompson, 501 U.S. 722,

21   749-50 (1991) (citations omitted; internal quotation marks omitted); Thomas v. Goldsmith,

22   979 F.2d 746, 749 (9th Cir. 1992).

23        Grounds 1, 3, 4, 5, 6, 7, 8, 11, 13, 15, 16, 17, 18, 19, and 20, were presented in

24   Petitioner's state court habeas petition.[3]  However, Petitioner presented only one claim in his

25

26        [3] See Answer, Ex. G, pgs. 4-6 (Ground 1), pg. 18 (Ground 2), pg. 8 (Ground 3), pgs. 6-7
     (Ground 4), pgs. 9-12 (Grounds 5, 6, 7, 8), pgs. 15-16 (Ground 10), pg. 13 (Ground 11), pgs. 21-22
27   (Ground 12), pg. 15 (Ground 13), pg. 22 (Ground 14), pg. 12 (Ground 15), pgs. 8-9 (Ground 16),
     pg. 11 (Ground 17), pg. 7 (Ground 18), pg. 12 (Ground 19), pgs. 14-15 (Ground 20), pg. 18 (Ground
28   21).

1   direct appeal:  that Petitioner was entitled to additional eleven days of pre-sentence credit.

2   The trial court accordingly denied Petitioner's prosecutorial misconduct and abuse of judicial

3   discretion claims on the grounds that Petitioner had failed to raise those claims on direct

4   appeal, and had therefore waived them pursuant to Rule 32.2(a)(3), Ariz. R. Crim. P.[4]

5   (Answer, Ex. I, pg. 1.) Rule 32.2(a)(3) constitutes an independent and adequate state ground

6   justifying a procedural default.  See Stewart v. Smith, 536 U.S. 856, 860 (2002).  Thus,

7   Grounds 1, 3, 4, 5, 6, 7, 8, 9, 11, 13, 15, 16, 17, 18, 19, and 20, are procedurally defaulted,

8   absent a showing of cause and prejudice or a fundamental miscarriage of justice.  See

9   Coleman v. Thompson, 501 U.S. 722,  749-50 (1991) (citations omitted; internal quotation

10  marks omitted); Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992).

11          Petitioner attributes his failure to raise Grounds 1, 3, 4, 5, 6, 7, 8, 9, 11, 13, 15, 16, 17,

12  18, 19, and 20, to his appellate counsel's ineffective assistance of counsel. (Reply, pgs. 2-4.)

13  According to Petitioner, he instructed his appellate counsel to raise these issues on appeal,

14  but appellate counsel refused to present them because she found them to be without merit.

15  (Petition, Ground 14.)

16          Appellate counsel's decision to present only the sentencing issue on appeal does not

17  constitute cause excusing the procedural default unless it rose to the level of ineffective

18  assistance of counsel.  See Edwards v. Carpenter, 529 U.S. 446 (2000) (citing Murray v.

19  Carrier, 477 U.S. 478, 490-492 (1986)).  For the reasons stated in the Section (B)(iii)(d)

20  below, appellate counsel's decision to present only the sentencing issue on appeal did not rise

21  to the level of ineffective assistance of counsel.  Accordingly, Petitioner has failed to

22  demonstrate cause and prejudice, and has procedurally defaulted Grounds 1, 3, 4, 5, 6, 7, 8,

23  9, 11, 13, 15, 16, 17, 18, 19, and 20.  The Magistrate Judge recommends that the petition be

24  denied with respect to these grounds.

25

26  _____

27          [4] Petitioner's failure to include his ineffective assistance of counsel claims in his direct appeal
    does not constitute a waiver of those claims because, under Arizona law, such claims are not to be
    raised on direct appeal, but in post-conviction relief proceedings.  See State v. Spreitz, 202 Ariz. 1,

28  3, 39 P.3d 525, 527 (2002).

1

2   **B. Merits**

3       **i.       Standard of Review**

4           On habeas review, a state court's findings of fact are entitled to a presumption of

5   correctness when fairly supported by the record.  Wainwright v. Witt, 469 U.S. 412, 426

6   (1985).  The presumption of correctness also applies to a state appellate court's findings of

7   fact. Sumner v. Mata, 449 U.S. 539, 546 (1981).  The question presented in a state prisoner's

8   petition for a writ of habeas corpus is "whether the state proceedings satisfied due process."

9   Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).

10          Federal courts may entertain a state prisoner's petition for habeas relief only on the

11  grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the

12  United States. Reed v. Farley, 512 U.S. 339 (1994).  General improprieties occurring in state

13  proceedings are cognizable only if they resulted in fundamental unfairness and consequently

14  violated the petitioner's Fourteenth Amendment right to due process.  Estelle v. McGuire,

15  502 U.S. 62, 67-68 (1991)("[I]t is not the province of a federal habeas court to reexamine

16  state court determinations on state law questions."); Bonin v. Calderon, 77 F.3d 1155, 1158

17  (9th Cir. 1996).  The Supreme Court has held in the habeas context that "this Court will not

18  review a question of federal law decided by a state court if the decision of that court rests on

19  a state law ground that is independent of the federal question and adequate to support the

20  judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991).  The provisions of the Anti-

21  Terrorism and Effective Death Penalty Act (AEDPA) govern this case and pose special

22  burdens. Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir.2004) (en banc). Under AEDPA,

23  when reviewing a state criminal conviction, a federal court may grant a writ of habeas corpus

24  only if a state court proceeding "(1) resulted in a decision that was contrary to, or involved

25  an unreasonable application of, clearly established Federal law, as determined by the

26  Supreme Court of the United States; or (2) resulted in a decision that was based on an

27  unreasonable determination of the facts in light of the evidence presented in the State court

28  proceeding." 28 U.S.C. § 2254(d).

9

Under § 2254(d)(1), a state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court cases or "if the state court confronts a set of facts that are materially indistinguishable from" a Supreme Court decision but "nevertheless arrives at a result different from" that precedent. <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court decision is an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle" from a Supreme Court decision "but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. In considering whether a state court has unreasonably applied Supreme Court precedent, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411; <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002). In conducting habeas review, we "presum[e] that state courts know and follow the law." <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002).

Petitioner has properly exhausted the following grounds, alleging that he was denied ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments:

- Ground 2: the prosecutor failed timely to disclose evidence, thereby preventing Petitioner's trial counsel from providing effective assistance of counsel,
- Ground 10: trial counsel failed to present alibi testimony and medical evidence of Petitioner's injury,
- Ground 12: trial counsel failed to file a motion for a new finding of probable cause,
- Ground 14: appellate counsel failed to raise issues that Petitioner thought should be raised on appeal, and
- Ground 21: trial counsel failed to file pre-trial motions.

**ii.    Trial court's decision was not contrary to federal law**

Petitioner has failed to demonstrate that the state court's decision was contrary to

10

federal law.  In considering the Rule 32 petition, the trial court applied the appropriate federal law.  The trial court concluded that "Defendant has failed to raise a colorable claim and has failed to establish both prongs of <u>State v. Salazar</u>, 46 Ariz. 540, 707 P.2d 944 (1985); <u>Strickland v. Washington</u>, 466 U.S. 558, 104 S.Ct. 2052 (1984)." (Answer, Ex. I, pg. 2.) <u>Strickland v. Washington</u> is the leading United States Supreme Court case governing ineffective assistance of counsel claims.

### iii.    Trial court's decision was not an unreasonable application of federal law

In addition, Petitioner has failed to demonstrate that the state court application of federal law to the facts was unreasonable.  The Sixth Amendment guarantees not only the right to counsel, but the right to effective assistance of counsel.  <u>Strickland v. Washington</u>, 466 U.S. at 686.  The burden of proof on Petitioner to show ineffective assistance is two-pronged.  First, Petitioner must show that counsel's performance was deficient, in that counsel made errors so serious that counsel was not functioning as "counsel."  <u>Strickland</u>, 466 U.S. at 687.  In demonstrating a deficient performance, Petitioner must show that the representation fell below an objective standard of reasonableness.  <u>Id</u>. at 688.  Judicial scrutiny of counsel's performance must be highly deferential, since there is a "strong presumption that counsel's performance falls within the "wide range of professional assistance."  <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986) (quoting <u>Strickland</u>, 466 U.S. 689).

Second, in proving ineffectiveness, Petitioner must show that counsel's deficient performance prejudiced the defense.  <u>Strickland</u>, 466 U.S. at 692.  To prove prejudice, Petitioner must show that there is a reasonable probability that, but for counsel's errors and omissions, the result of the proceeding would have been different.  <u>Id</u>. at 694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  <u>Id</u>.

Mere conclusory allegations are insufficient to prove that counsel was ineffective. <u>Shah v. United States</u>, 878 F.2d 1156, 1161 (9th Cir. 1989).  A habeas petitioner is entitled to an evidentiary hearing or habeas relief when "he has alleged facts [in his petition] which, if proven, would entitle him to relief. . . . Notice pleading is not sufficient, for the petition is

11

expected to state facts that point to a real possibility of constitutional error." <u>O'Bremski v.</u> <u>Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990) (quotations omitted).

The trial court concluded that

> As to defendant's claim of ineffective assistance of trial counsel, the Court notes that defendant refused to agree to exclusion of Rule 8 time when his trial counsel requested additional time to prepare for trial. Defendant was advised by this Court that any post-trial claim of ineffective assistance of counsel would be difficult to raise since defendant did not agree to allow his own attorney sufficient time to prepare for trial. Defendant was advised clearly that he had the opportunity to allow his counsel, Stephen Johnson, additional time to prepare but defendant insisted that he did not want to waive any Rule 8 time. Defendant has raised multiple claims of ineffective assistance of trial counsel, many of which are tactical decisions made by trial counsel. The Court finds that defendant has failed to raise a colorable claim.

(Answer, Ex. I, pg. 2.) The Court agrees with the trial court that, to the extent Petitioner now claims his trial counsel was not fully prepared for trial, that argument is undermined by Petitioner's own refusal to permit his trial counsel adequate time to prepare. (Answer, Ex. R, pgs. 4a-14a.) In addition, the Court concludes that there are insufficient facts in the record supporting Petitioner's claim that his trial counsel's performance fell below the standard of care, and therefore the trial court reasonably applied the governing federal law to the facts before it.

**a.   Ground 2:**

Petitioner alleges that the prosecutor failed timely to disclose evidence, thereby preventing Petitioner's trial counsel from providing effective assistance of counsel. The facts alleged in support of this claim, however, are almost entirely related to allegedly inappropriate conduct by the prosecution, not by defense counsel. Petitioner cannot attempt to resurrect a defaulted prosecutorial misconduct claim in the form of an ineffective assistance of counsel claim. To the extent that Ground 2 is based on conduct of the prosecution, it fails to allege a deficiency in his defense counsel's performance and therefore fails to present facts to support a <u>Strickland</u> claim.

The only wrongdoing on the part of trial counsel that Petitioner alleges in Ground 2 is his trial counsel's failure to file a written motion for disclosure of police supplements and police reports. (Reply, pg. 7.) The record indicates that Petitioner was initially represented

12

by a public defender.  Stephen Johnson was appointed as counsel for Petitioner after the public defender indicated a conflict in representation.  (Reply, Ex. E, pgs. 171-72.)  Prior to Mr. Johnson's appointment, the public defender made an oral motion for disclosure of the police supplements and reports, and was instructed by the Court that a written motion would need to be filed.  (Reply, Ex. E, pg. 172.)  No such motion was filed by either the public defender or Mr. Johnson.  (Id.)

Petitioner was not prejudiced by his counsel's failure to file the discovery motion, however, because the supplements that would have been produced in response to the motion did not contain exculpatory evidence.  Mr. Johnson moved for a mistrial upon discovering that the prosecution had failed to disclose a police supplement that would have been disclosed had defense counsel filed its discovery motion.  (Reply, Ex. E, pg. 168.)  Mr. Johnson argued that the supplement contained fingerprint evidence that would have demonstrated that his client's fingerprints were not found at the scene.  (Reply, Ex. E, pg. 169.)  The trial court reviewed the supplement, however, and concluded that it stated only that no fingerprints could be lifted from the scene.  (Reply, Ex. E, pg. 170-71.)  The fingerprint evidence would only have been exculpatory if it had demonstrated that someone's fingerprints were found at the scene, but not Petitioner's.  Because the evidence did not support such a conclusion, Petitioner has failed to demonstrate a reasonable probability that, but for counsel's errors and omissions, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694.

### b.  Ground 10:

Petitioner alleges that trial counsel failed to present alibi testimony and medical evidence of Petitioner's injury.  Specifically, Petitioner alleges that his trial counsel should have called as alibi witnesses Petitioner's boss, who Petitioner claims was on his way to pick him up at the time he was arrested, and Petitioner's neighbor, who Petitioner claims to have visited just before he was arrested.  Petitioner further alleges that his trial counsel should have called his doctor as a witness to testify that Petitioner had previously been shot in the leg and was not physically capable of fleeing the scene.

13

1    Petitioner does not present the Court with any evidence that his boss or his neighbor

2    were willing to testify on his behalf.  Mere conclusory allegations are insufficient to prove

3    that counsel was ineffective.  <u>Shah v. United States</u>, 878 F.2d 1156, 1161 (9th Cir. 1989).  In

4    addition, even if Petitioner's boss had testified, he would not have been able to establish an

5    alibi for Petitioner because he was not with Petitioner when the crime was committed.

6    Furthermore, Petitioner admits that his trial counsel retained a private investigator to attempt

7    to locate Petitioner's neighbors to establish an alibi defense, and that the private investigator

8    left cards on all of Petitioner's neighbors doors, but was never contacted.  (Reply, pg. 10.)

9    Petitioner's trial counsel therefore made a reasonable effort to locate alibi witnesses, and

10    cannot be held responsible for the neighbors' failure to contact him.

11    Defense counsel's failure to present Petitioner's medical records at trial appears to

12    have been a strategic decision.  The records document Petitioner's recovery from a gunshot

13    wound to the leg, and close with the notation that "the patient is painless and walking full-

14    weight bearing."  (Answer, Ex. N.)  Thus, they do not support, but refute, Petitioner's claim

15    that he could not flee the pursuing officers on foot.  Instead of producing these records at

16    trial, defense counsel elicited more limited and favorable testimony from Petitioner; on direct

17    examination, Petitioner testified that in 1998, he was shot in the right shin and the left leg

18    above the knee,  and that he could not sprint or run fast as a result.  (Reply, Ex. E, pg. 133.)

19    A tactical decision by counsel with which the Petitioner disagrees cannot form the basis of

20    a claim of ineffective assistance of counsel.  <u>Wildman v. Johnson</u>, 261 F.3d 832, 839 (9th Cir.

21    2001).

22    **c.    Ground 12:**

23    Petitioner contends that his constitutional rights were violated when his counsel failed

24    to file a motion for a new finding of probable cause.  Petitioner believes that his counsel

25    should have filed such a motion because transcripts from the grand jury proceeding were

26    never filed with the court.  According to Petitioner, the grand jury transcripts might have

27    provided grounds for him to be "released and/or afforded a new grand jury proceeding with

28    his appearance there and/or given an opportunity to view the preliminary examination of his

14

case, and/or not be sitting in prison with 19.5 years without grand jury transcripts to know what contributed to his loss of liberty." (Reply, pg. 14.) Petitioner has failed to demonstrate, however, that his counsel was deficient in failing to file a motion for a new finding of probable cause, because Petitioner has not presented the Court with evidence from which it could conclude that the motion would have been justified. Petitioner has not provided the Court with a copy of the grand jury transcript or suggested which portions of the grand jury transcript reflect an error in the proceedings. The Court notes that in May, 2004, Petitioner was advised that the grand jury transcript from his trial court proceedings was available with the superior court clerk's office and could be obtained for a copying fee. (Reply, Ex. U.) Whether Petitioner ever ordered the transcript or not is unclear, but the record demonstrates that he had the opportunity to do so. Because mere speculation does not constitute grounds for habeas relief, <u>Shah</u>, 878 F.2d at 1161, Petitioner's Ground 12 is without merit.

### d.    Ground 14:

Petitioner contends that his appellate counsel was ineffective for failing to raise any claims in his direct appeal other than the sentencing issue that was presented. Specifically, Petitioner contends that his appellate counsel should have raised the issues that he presents in his petition. The Court disagrees.

Even if Petitioner could demonstrate that his appellate counsel was deficient in failing to present Ground 9 in his direct appeal, Petitioner's claim of ineffective assistance of counsel arising from that deficiency would nonetheless be precluded from this Court's review, because Petitioner failed to exhaust that claim in his state court post-conviction proceedings. Grounds 1, 3, 4, 5, 6, 7, 8, 11, 13, 15, 16, 17, 18, 19, 20 were presented to the state court in Petitioner's post-conviction proceedings, where they were found waived because Petitioner had not raised them in his appeal. Thus, if Petitioner can demonstrate that his counsel was deficient in failing to raise those grounds on appeal, and that Petitioner was prejudiced as a result, Petitioner is entitled to habeas relief.

Petitioner admits that he sent his appellate counsel "voluminous issues which included Brady issues, ineffective assistance of counsel issues, prosecutorial misconduct issues,

15

judge's abuse of discretion issues and all claims for relief included in this writ." (Petition, Ground 14.) Petitioner also admits that his appellate counsel told him that she had reviewed the issues that he presented and found them to be without merit. (Id.) The process of "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (citing Jones v. Barnes, 463 U.S. 745, 751-752 (1983). The Court concludes that appellate counsel's decision not to include Grounds 1, 3, 4, 5, 6, 7, 8, 11, 13, 15, 16, 17, 18, 19, 20 in Petitioner's appeal was reasonable in light of the fact that those claims did not present a strong likelihood of reversal. To the contrary, those claims lack merit for the following reasons.

In Ground 1, Petitioner argues that the prosecutor committed prosecutorial misconduct by failing timely to disclose the state's evidence. Petitioner fails to demonstrate, however, how the evidence would have been exculpatory if it had been produced earlier. Thus, Petitioner cannot demonstrate that, but for appellate counsel's failure to raise Ground 1 in his appeal, the outcome of his proceedings would have been different. Strickland, 466 U.S. at 688.

In Ground 3, Petitioner argues that the prosecutor engaged in prosecutorial misconduct when he asked Petitioner why he had not told his "alibi" story to anyone prior to trial. Petitioner claims that in asking this question, the prosecutor impeached Petitioner with his post-arrest silence in violation of Doyle v. Ohio, 426 U.S. 610 (1976). This argument would have been without merit on appeal, however, because Doyle, which held that the due process clause of the Fourteenth Amendment prohibits impeachment on the basis of a defendant's silence following Miranda warnings, does not apply to cross-examination that merely inquires into prior inconsistent statements. See Anderson v. Charles, 447 U.S. 404, 408 (1980). Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. Id. In the present case, Petitioner voluntarily spoke to police after being given his Miranda rights. (Answer, Ex. R, pg. 37.) To the extent that the prosecutor's question touched upon

statements made by Petitioner to police (and this Court notes that whether the prosecutor's question even went that far is doubtful), it did not violate Doyle's protection, because Petitioner did not remain silent following his arrest.

In Ground 4, Petitioner alleges that the prosecutor engaged in prosecutorial misconduct when he substantively embellished upon a police witness' testimony in direct examination by referring to the model of the car (a white Cadillac) from which the shots were fired, when the witness had made no such specification in his previous testimony. Other evidence at trial incontrovertibly established, however, that the shots were fired from a white Cadillac, a fact Petitioner that does not dispute. Petitioner has failed to demonstrate how he was harmed by the wording of the prosecutor's question.

Grounds 5, 6, 7 and 8 allege prosecutorial misconduct based on statements made by the prosecutor during closing arguments that Petitioner claims were not supported by the evidence. Ground 5 takes issue with the prosecutor's comment that Officer Vasquez was looking for a man named "Shawn" during the pursuit. Although Respondents claim that Officer Vasquez testified that he learned during the chase that the suspect's name was Shawn, the citation offered to the record by Respondents does not support that assertion, and the portions of the record containing Officer Vasquez's testimony were not provided to the Court by the Respondents. The Court notes that trial transcripts provided by Petitioner indicate that Officer Vasquez testified that when the crime was first reported to him, he was given a description of the suspect vehicle, but that the name of the suspect was not transmitted to him "at that time." (Reply, Ex. D, pg. 113.) Nevertheless, even if the prosecutor did misstate Officer Vasquez's testimony during trial, it would not have been grounds for a reversal. The test for prosecutorial misconduct under Arizona law is whether the misconduct affected the jury's ability to fairly assess the evidence. State v. Rosas-Hernandez, 202 Ariz. 212, 213, 42 P.3d 1177, 1183 (App. 2002) (citing State v. Murray, 184 Ariz. 9, 35, 906 P.2d 542, 568 (1995)). To require reversal, the misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial. Id., 202 Ariz. At 219, 42 P.3d at 1184 (citation omitted). Even if the jury was erroneously informed that Officer Vasquez was looking for

1   a suspect named Shawn during pursuit, that error would not reasonably affect their ability
2   to fairly assess the evidence presented.

3       Petitioner's arguments with respect to Grounds 6, 7, and 8 are unsupported by the
4   record.  In Ground 6, Petitioner argues that the prosecutor's statement in closing that one of
5   the victims, Frank Malone, identified Petitioner following his arrest, was not supported by
6   the evidence. One of the arresting officers, Officer Winward, testified, however, that Malone
7   identified Petitioner following his arrest.  (Answer, Ex. O, pg. 107-108.)  In Ground 7,
8   Petitioner claims that the prosecutor's statement that victim Jennifer Stewart told police at
9   the scene that she could identify her assailant if she saw him again was not supported by the
10  evidence.   The record indicates, however, that Officer Winward testified that Jennifer
11  Stewart told him exactly that. (Answer, Ex. O, pg. 111.) In Ground 8, Petitioner claims that
12  the prosecutor misstated the evidence during closing when he argued that Jennifer Stewart
13  "told the police officer that she could see the defendant's lips moving.  She couldn't actually
14  hear the words, but they were something to the effect of 'I am going to kill you, I'm going to
15  kill all of you.'"  (Answer, Ex. Q, pg. 34-35.)  That portion of the closing argument was
16  supported by the testimony of Officer Winward and Jennifer Stewart.  (Answer, Ex. O, pg.
17  111; Reply, Ex. E, pg. 64.)  Thus, Petitioner's arguments with respect to these Grounds are
18  without merit.

19      In Grounds 11 and 18, Petitioner claims that his constitutional rights were violated
20  when witnesses gave conflicting testimony during his trial.  Petitioner does not have a
21  constitutional right to a trial free of contradicting evidence; to the extent that evidence is in
22  conflict, the jury must weigh the credibility of the witnesses.

23      In Ground 13, Petitioner claims that his due process rights were violated because a
24  copy of the grand jury transcript was not filed with the clerk of the court.  As explained in
25  Section (B)(iii)(c), above, Petitioner has not presented any evidence to suggest that his
26  proceedings would have reached a different result if he had been provided with a copy of the
27  grand jury transcript in a timely manner.

28      In Ground 15, Petitioner claims that the prosecutor engaged in misconduct by

vouching for a witness during his closing.  The statement that Petitioner takes issue with, however – asking jurors if they would always remember the face of the assailant who pointed a gun at their children, and stating that the prosecutor believed that they would – did not constitute vouching.  See State v. Lamar, 205 Ariz. 431, 444, 72 P.3d 831, 841 (2003) ("A prosecutor impermissibly vouches for a witness by placing the prestige of the government behind its witnesses or suggesting that information not presented to the jury supports a witness' testimony.").

In Ground 16, Petitioner claims that his due process rights were violated when the prosecutor attacked Petitioner's credibility during closing argument.  The prosecutor was entitled, however, to point out inconsistencies in Petitioner's testimony during closing argument.  Accordingly, this was not a valid ground for appeal.

In Ground 17, Petitioner claims that the prosecutor erred by arguing in his rebuttal closing argument that if exculpatory fingerprint evidence had existed, the defense would have produced it at trial.  During Petitioner's trial, his defense counsel argued that "there is not a fingerprint expert here.  Ask yourself why.  Why wouldn't the state put a fingerprint expert on the stand?  And the answer is because my client's fingerprints were found nowhere. . . . Mr. Leister, the technician who does the ballistics, I asked him, you did not do the fingerprints, did you, but to your knowledge, fingerprints were done . . . obviously fingerprints were done. . . No fingerprint was found of my client's in there."  (Answer, Ex. Q, pgs. 45-46.)  During his rebuttal, the prosecutor asked the jury "Do you really think – if we're going to engage in the sort of speculation that we have here – if evidence of somebody else's fingerprints on the car would have been found that you wouldn't have heard about it?"  (Id. at pg. 61.)  Even if this statement improperly implied that Petitioner had the burden of proof, the prosecutor's conduct would not have been grounds for appeal.  Defense counsel objected to the prosecutor's argument, but did not request a curative instruction.  The rule in Arizona is that ordinarily alleged prosecutorial misconduct must be objected to and a curative instruction requested so that the trial court has a chance to cure the error.  See State v. White, 115 Ariz. 199, 564 P.2d 888 (1977) (citing Rutledge v. State, 41 Ariz. 48, 15 P.2d 255

19

(1932)).  If no curative instruction is requested, reversible error has not occurred unless it appears affirmatively from the circumstances of the trial that the conduct of the prosecutor has been such that it must be presumed to have resulted in a miscarriage of justice.  Id. Based upon the evidence in the record, it cannot be said that the prosecutor's argument regarding defense counsel's failure to produce exculpatory fingerprint evidence resulted in a miscarriage of justice.  Defense counsel opened the door to speculation about the meaning of the lack of fingerprint evidence, arguing that the absence of fingerprints supported an inference of innocence.  The prosecutor's response to that argument did nothing more than present the jury with an alternate inference.  See State ex rel. McDougall v. Corcoran, 153 Ariz. 157, 160, 735 P.2d 767, 770 (1987) ("It strikes us as elemental fairness to allow the State to comment upon the defense's failure to adduce potentially exculpatory evidence to which defendant had access when defendant is attacking the accuracy of the State's evidence.").

       In Ground 19, Petitioner argues that his due process rights were violated when he was asked a question by a juror that he could not answer without referencing the fact that he was currently incarcerated.  Petitioner had testified during trial that he always wore a bullet-proof vest.  One of the jurors asked him why he was not wearing a bullet-proof vest in the courtroom, and Petitioner answered "Because I'm – I knew I was coming in here for trial." (Reply, Ex. E, pg. 158.)  Petitioner claims that the real reason that he was not wearing a bullet-proof vest was because he was in prison, but that he could not answer the question honestly because he knew that the jury was not supposed to know that he was incarcerated. Petitioner claims that by allowing the jury question to be asked, the court made Petitioner look like a liar in front of the jury.  (Reply, pg. 22.)  As a threshold matter, the Court questions whether Petitioner's answer to the question was actually false, or simply a carefully crafted, but truthful, response. Regardless, Petitioner's argument assumes that the jury knew that the "real" reason Petitioner was not wearing a vest was because he was incarcerated. The jury was not presented with evidence of Petitioner's incarceration, and there is no evidence to suggest that the jury question undermined Petitioner's credibility.

In Ground 20, Petitioner claims that his convictions for drive-by shooting, assault and endangerment violate the double jeopardy clause.  The test to determine whether the violation of two statutory provisions constitutes two offenses or only one is whether each provision requires proof of an additional fact which the other does not.  See Todd v. State, 917 P.2d 674, 677 (9th Cir. 1996) (citing Blockburger v. United States, 284 U.S. 299, 304 (1932)).  Because the offenses of drive-by shooting, aggravated assault and endangerment contain different elements, see A.R.S. §§ 13-1209,  A.R.S. § 13-1204 and A.R.S. § 13-1201, this assertion is without merit.

In sum, the numerous arguments that Petitioner believes his appellate counsel should have raised on appeal are without legal merit.  Failure to take futile action can never be deficient performance.  Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996).  Accordingly, Petitioner's appellate counsel was not unreasonable in deciding not to raise these issues on appeal. Petitioner has failed to rebut the strong presumption that his appellate counsel's performance fell within the wide range of professional assistance.  See Strickland, 466 U.S. at 689.  Accordingly, Ground 14 is without merit.

### e.    Ground 21:

Petitioner alleges that his trial counsel was ineffective because he failed to prepare adequately for trial.   Specifically, Petitioner contends that his trial counsel should have (a) filed a motion to compel discovery, (b) filed a motion in limine to preclude admission of his bullet-proof vest into evidence, (c) deposed the victims, (d) objected, rather than stipulated, to the admission of a photo found in Petitioner's home, which was entered without a warrant, (e) objected to testimony offered at trial, (f) objected to the juror question regarding why Petitioner was not wearing a bullet-proof vest, (g) impeached victim Jennifer Stewart, (h) objected to the admission of evidence that Petitioner gave police a fake name and fake birth date when he was arrested, and that trial counsel (i) failed to file a motion for a new finding of probable cause, (j) failed to interview witnesses, (k) failed to establish a meaningful relationship with Petitioner, (l) failed to present medical evidence of Plaintiff's injury, and (m) failed promptly to interview Plaintiff.

21

1       These arguments are without merit.  Several of these allegations (a, i and l)  are

2   duplications of other grounds alleged in the petition, and are without merit for the reasons

3   previously stated.  Other allegations (f, g and h) challenge trial counsel's failure to take an

4   action which, for the reasons stated in Section B(iii)(d) above, would have been futile.  To

5   the extent that Petitioner complains that his counsel failed to adequately prepare for trial (b,

6   c, d, k, m), the arguments are disingenuous in light of Petitioner's refusal to agree to exclude

7   time in order for his counsel to prepare.  Finally, Petitioner fails to allege how he was

8   prejudiced by any of these alleged failures.

9       The trial court's decision to deny petitioner's state habeas petition was not contrary to,

10  or an unreasonable application of, federal law.  In addition, Petitioner does not contend, and

11  the Court finds no evidence from which to conclude, that the trial court's decision was based

12  on an unreasonable determination of the facts in light of the evidence presented in the State

13  court proceeding.  Accordingly, the Magistrate Judge further recommends denying the

14  petition with respect to Grounds 2, 10, 12, 14 and 21.

15  **RECOMMENDATION**

16      Based on the foregoing, the Magistrate Judge recommends that the District Court enter

17  an order DENYING the Petition for Writ of Habeas Corpus.

18      Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within

19  ten days of being served with a copy of the Report and Recommendation.  If objections are

20  not timely filed, they may be deemed waived.

21      The Clerk is directed to mail a copy of the Report and Recommendation to Petitioner

22  and counsel for Respondents.

23      DATED this 9th day of March, 2007.

24

25

26  _____
    Jennifer C. Guerin
27  United States Magistrate Judge

28